UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**GEORGE COSTA, individually and on behalf of all others similarly situated**

    Plaintiff,

v.                                                                      Case No: 5:23-cv-170-GAP-PRL

**EXPERIAN INFORMATION SOLUTIONS INC., CITBANK, N.A., KOHL's DEPARTMENT STORES, INC., and TD BANK USA, N.A.,**

    Defendants.

### REPORT AND RECOMMENDATION[1]

In this Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, case, Defendant Experian Information Solutions, Inc. ("Experian"), has moved to compel arbitration pursuant to an arbitration agreement applicable to it and Plaintiff. (Doc. 12). Plaintiff has filed a response in opposition and Experian has filed a reply. (Docs. 13 & 17). Upon consideration, I submit that Experian's motion to compel arbitration should be granted.

### I.   BACKGROUND

In this case, Plaintiff brings a putative class action under the Fair Credit Reporting Act (FCRA). Plaintiff, George Costa, contends that Experian reported inaccurate information regarding accounts that he claims were discharged in bankruptcy. Plaintiff contends that he

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

attempted to dispute those accounts with Experian but was unsuccessful. Plaintiff claims that Experian violated Section 1681e(b) of the FCRA for failing to maintain reasonable procedures to ensure the maximum possible accuracy of information in a credit report and failing to conduct a reasonable investigation of his dispute. (Doc. 1). Plaintiff claims that Experian's actions were negligent and willful.

It is undisputed that under an agreement between Plaintiff and Experian's affiliate ConsumerInfo.com, Inc., Plaintiff enrolled in a credit monitoring service known as "Creditworks," and agreed to terms of use that apply to Experian and include an arbitration agreement. The parties also do not dispute that, subject to certain terms, the arbitration agreement that Plaintiff initially agreed to in 2018 allowed Plaintiff the opportunity to reject subsequent changes to the agreement and to instead remain bound by the terms of the agreement that was in effect at the time he signed up for services.

On December 16, 2022, Plaintiff first initiated this dispute by filing a putative class action in this Court. (Case No. 5:22-cv-662-JSM-PRL). That first action alleged the same or substantially similar claims as those alleged in the instant action. At that time, Plaintiff had not rejected any subsequent changes to the arbitration agreement. As Experian contends, it informed Plaintiff that it intended to move to compel the dispute to arbitration, and Plaintiff dismissed the case without prejudice. (Case No. 5:22-cv-662-JSM-PRL, Docs. 34 & 35). Plaintiff then notified Experian via letter that he rejected the changes to the arbitration agreement. On March 13, 2023, Plaintiff re-initiated the dispute by filing the instant action. (Doc. 1).

Experian now moves to compel arbitration under the arbitration agreement. Meanwhile, Plaintiff contends that his claims are not subject to arbitration. For the reasons

explained below, Plaintiff's arguments are without merit. I recommend that Experian's motion to compel arbitration be granted.

## II.  LEGAL STANDARDS

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 2, there is "a liberal federal policy favoring arbitration[.]" *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). When an arbitration agreement exists, "questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F. 3d 1316, 1322 (11th Cir. 2001); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) (noting federal courts "consistently conclude[] that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.").

Under the FAA, arbitration agreements are "on an equal footing with other contracts" and courts must "enforce them according to their own terms." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26; *see AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (FAA establishes "fundamental principle that arbitration is a matter of contract.") (citations omitted). A party seeking to compel arbitration under an agreement must establish: (1) a written arbitration agreement exists, (2) a nexus to interstate commerce exists, and (3) the arbitration agreement covers the claims at issue. *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017). Here, the parties do not dispute the existence of an arbitration agreement and a nexus to interstate commerce. *See Valiente v. StockX, Inc.*, No. 22-cv-22432-BLOOM/Otazo-Reyes, 2022 WL 17551090, at *4 (S.D. Fla. Dec. 9, 2022) ("because the Plaintiff did not deny the existence of the membership agreement and the membership agreement contained an arbitration clause, there was a valid and enforceable agreement to

arbitrate.") (citing *Bachewicz v. JetSmarter, Inc.*, No. 18-cv-62570-BLOOM/Valle, 2019 WL 1900332, at *3 (S.D. Fla. Apr. 29, 2019)). Where there is no arbitration agreement, parties cannot be compelled to arbitrate their claims. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1302 (11th Cir. 2017).

### III. DISCUSSION

Plaintiff opposes the motion to compel arbitration and contends that his claims in this case are not subject to arbitration. Simply put, Plaintiff's argument is unavailing because the arbitration agreement delegates "all issues" to an arbitrator, including issues regarding arbitrability, enforceability and scope.

Plaintiff's argument that his claims under the FCRA are not subject to arbitration is based upon his attempt to opt-out of subsequent changes to the arbitration agreement. Plaintiff contends that his opt-out results in the operative terms of use being a version that provided:

> ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. However, for the avoidance of doubt, any dispute you may have with us arising out of the Fair Credit reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.

(Doc. 12-1 at 19). Plaintiff thus contends that under the "unambiguous contractual language carving out FCRA claims from the arbitration provision in that original agreement, Plaintiff plainly cannot be forced to arbitrate the claims he has brought in this action." (Doc. 13 at 5).

The Court disagrees. As the language of the contracts themselves demonstrates and the declaration of David Williams, VP of Business Governance for ConsumerInfo.com, Inc., establishes, issues of arbitrability are delegated to the arbitrator. (Doc. 12-1). Indeed, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 202 L. Ed. 2d 480, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 983, 944 (1995); citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010)).

"[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530. Here, the arbitration agreement that Plaintiff originally agreed to explicitly states that it is "intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law." (Doc. 12-1 at 19). It also expressly includes the following delegation provision:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

(Doc. 12-1 at 20). Thus, even under the version of the agreement that Plaintiff concedes applies, the issue regarding arbitrability of the FCRA claims is reserved for the arbitrator. The same is true under the subsequent arbitration agreement, which contains a substantially similar delegation provision:

> All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, (iii) whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate, (iv) whether all or any part of this arbitration provision or Agreement is unenforceable, void or voidable including, but not limited to, on grounds of unconscionability, (v) any dispute regarding the payment of arbitration-related fees, (vi) any dispute related to the dispute Notice provisions in subparagraph (b) (above), and (vii) any dispute related to Mass Arbitration (defined below).

(Doc. 12-1 at 55).

Notably, the only cases cited by Plaintiff in support of his position predate, and thus fail to consider, the Supreme Court's decision in *Schein*. Meanwhile, the Court notes that the precise argument advanced by Plaintiff here was rejected by the court in *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021) (finding that the court's inquiry was "limited to the issue of whether a valid arbitration agreement exists," and that the delegation clause delegates "exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision."). Like the Plaintiff in *Coulter*, here the Plaintiff has also not directly disputed the delegation clause.

As a final matter, the Court acknowledges Experian's argument that Plaintiff's attempt to opt-out of subsequent changes to the agreement was untimely. Experian contends that the initial agreement required the rejection of changes to occur prior to initiating the dispute. As Experian contends, Plaintiff initiated this suit by filing the same class action in this Court (Case No. 5:22-cv-662-JSM-PRL) on December 16, 2022, prior to his attempt to reject any changes to the arbitration agreement. While this argument is persuasive, it relates to the issue of the scope of the agreement and whether the operative terms exclude FCRA claims. As already established, however, whether the parties are bound by a given arbitration clause is a

question of arbitrability. *See Coulter*, 2021 WL 735726, at *4 n. 2) ("Plaintiff argues that his FCRA claim is exempted from the Arbitration Provision that he agreed to in 2017. Whether Plaintiff's FCRA claim is subject to the Arbitration Provision is a question of 'scope' of the Provision, and thus falls within the arbitrator's authority to decide.").

I submit that the arbitration agreement is valid, and it clearly delegates issues of arbitrability to the arbitrator. Consequently, Experian's motion to compel arbitration should be granted.

### IV.  RECOMMENDATION

Upon due consideration, I submit that Experian's motion to compel arbitration (Doc. 12) should be **granted**.

Recommended in Ocala, Florida on August 8, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy